IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff

v.

Michael J. Snyder,

                Defendant.

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint alleges as follows:

### I.   SUMMARY OF THE ACTION

1. During the years 2002 through 2004, Defendant Michael J. Snyder, the former Chief Executive Officer of Red Robin Gourmet Burgers, Inc. ("Red Robin"), knowingly or recklessly made incorrect representations to Red Robin and its accountants that some of his personal travel expenses were business expenses. Red Robin then paid for and recorded these expenses as business expenses rather than as compensation to Defendant. Accordingly, Red Robin's publicly-filed proxy statements and annual reports for the fiscal years 2002 through 2004 contained material misstatements of Defendant's compensation.

2. Defendant's incorrect representations caused Red Robin to materially understate his compensation for 2002 by approximately $408,000 or 37%; for 2003 by

$345,000 or 25%; and for 2004 by $436,000 or 28%. The material misstatements appeared in Red Robin's Forms 10-K filed March 28, 2003, March 12, 2004 and April 6, 2005, in proxy statements filed April 18, 2003, April 16, 2004 and April 22, 2005, in a Form S-3 registration statement filed November 3, 2003, and in a Form S-8 registration statement filed June 2, 2005.

## II.   JURISDICTION AND VENUE

3.   The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Sections 21(d) and (e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and(e)] for an order permanently restraining and enjoining Defendant and granting other equitable relief.

4.   This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa].

5.   Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6.   In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce, of the mails, of the facilities of a national securities exchange, and/or of the means and instruments of transportation or communication in interstate commerce.

7.   Red Robin's headquarters are located in this judicial district, and certain of

the transactions, acts, practices and courses of business constituting the violations of law alleged herein occurred within this judicial district.

### III.   DEFENDANT AND RELATED PARTY

8.    Defendant Michael J. Snyder is currently a resident of Ketchum, Idaho. During the time period relevant to this Complaint, Defendant was employed as the President, Chief Executive Officer and Chairman of the Board of Directors of Red Robin. Defendant retired and resigned from his positions at Red Robin on August 11, 2005.

9.    Red Robin Gourmet Burgers, Inc., a Delaware corporation, is headquartered in Greenwood Village, Colorado.  Red Robin owns and franchises a chain of casual dining restaurants across 33 states and in Canada.  In July 2002, Red Robin completed an initial public offering of its common stock.  Red Robin stock is registered under Section 12(b) of the Exchange Act, and trades on the Nasdaq National Market.

### IV.   SUMMARY OF VIOLATIONS AND RELIEF SOUGHT

10.    Defendant violated Section 17(a) of the Securities Act [15 U.S.C. § 77q (a)] and Sections 10(b), 13(b)(5), and 14(a) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(b)(5), and 78n(a)] and Rules 10b-5, 13b2-1, 13b2-2 and 14a-9 [17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13b2-2, and 240.14a-9], thereunder.  Defendant aided and abetted Red Robin's violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), and 78m(b)(2)] and Rules 12b-20 and 13a-1, [17 C.F.R. §§ 240.12b-20, and 240.13a-1,] thereunder, and Defendant violated Rule 13a-14

[17 C.F.R. § 240.13a-14] of the Exchange Act, and unless restrained and enjoined will violate or aid and abet violations of such provisions.

11. The Commission also seeks an order requiring Defendant to pay third tier civil penalties pursuant to Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 77t(d) and 78u(d)(3)], in the amount of $250,000.00.

12. The Commission also seeks an order permanently barring Defendant from serving as an officer and director of any public company pursuant to the equitable authority of the court, and Section 21(d)(2) of the Exchange Act, as amended [15 U.S.C. § 78u(d)(2)].

## V.   FACTS

13. During the time period relevant to this Complaint, Defendant made extensive use of charter jet services, chartering some fifty or more trips each year both for personal and business use.

14. Defendant chartered the majority of his trips through one particular charter jet service. In or about the spring of 2001, Defendant instructed this particular charter jet service to stop putting the names of the passengers or the destinations of the flights on its invoices, and the charter jet service complied.

15. Thus, beginning in 2001, the invoices sent to Defendant at Red Robin by this charter jet service contained only the dates of trips and the amount of the charges, but did not contain the names of passengers or destinations.

16. Defendant, at his discretion, paid some of these invoices personally and submitted others to Red Robin for payment as alleged business expenses. When Defendant submitted a charter jet invoice for payment by Red Robin as an alleged business

expense, he added his own, brief handwritten notations on the face of the invoice indicating the alleged business purpose of the trip, but the invoices did not contain any information regarding the passengers on, or destinations of, the charter jet trips. This practice continued throughout 2002.

17. Defendant also submitted credit card bills, containing charges for items such as dinners and hotels, for payment by Red Robin during this time period with his own brief, handwritten notes indicating alleged businesses purposes for the charges.

18. At the end of 2002, Defendant was asked to review the charter jet company invoices he had submitted to Red Robin for payment as business expenses for that year. In response, in a letter to Red Robin's then Chief Financial Officer dated January 1, 2003, Defendant asserted that "[a]ll invoices for charter aircraft use in FY 2002 that I submitted [to Red Robin for payment]. . . related exclusively to the business of Red Robin." Accordingly, no compensation arising from Defendant's personal usage of charter jet service was recorded in Red Robin's books, or reported in any of Red Robin's public filings, for the year 2002.

19. In 2003, Red Robin adopted a policy requiring, among other things, that a "Trip Summary Form" be completed for each charter jet trip. This form called for, among other things, the dates of travel, the destination(s), the names of all passengers, and the business purpose for the trip. The policy allowed Defendant to take personal guests on business trips if space were available, and required Defendant to report such guests to Red Robin so that the value of this personal usage could be recorded as compensation to Defendant. Thus, certain of Defendant's personal expenses related to charter jet travel were authorized as compensation, and were required to be reported as such by Defendant

to Red Robin.

20. Beginning in 2003 and continuing through 2004, Defendant began to personally fill out a Trip Summary Form to accompany each charter jet invoice he submitted to Red Robin for payment as an alleged business expense. On these forms, Defendant purported to list all passengers, destinations and the alleged business purpose for each trip. Defendant also continued to submit credit card bills for payment during this time period with his own brief, handwritten notes indicating alleged business purposes for the charges.

21. For the years 2003 and 2004, Defendant sometimes indicated on Trip Summary Forms that he was joined on a flight by his wife. This caused Red Robin to report, for tax purposes, additional compensation to Defendant arising from charter jet usage for the year 2003 of roughly $10,000.00, and for the year 2004 of roughly $20,000.00. Red Robin did not, however, report the value of this personal usage as compensation in its proxy statements or annual reports because these then-known amounts fell below the threshold for reporting this type of compensation pursuant to the rules of the Commission.

22. In the spring of 2004, and again in the spring of 2005, Defendant signed a Director's and Officer's Questionnaire affirming, among other things, that his compensation arising from charter jet usage was no more than the small amounts referred to in paragraph 21 above. Defendant knew that the information related to his compensation contained in the Director's and Officer's Questionnaires was incorporated into Red Robin's publicly-filed proxy statements.

23. Defendant also reviewed before filing Red Robin's proxy statements for

2003, 2004 and 2005, containing his alleged compensation for the years 2002, 2003 and 2004. For the reasons set forth in paragraphs 18 and 21 above, none of these proxy statements reflected any compensation arising from Defendant's personal charter jet usage or other personal travel expenses.

24. In 2005, after a Red Robin accountant expressed concerns, Red Robin launched an internal investigation into Defendant's personal charter jet usage and other travel expense reimbursements. The investigation revealed that Defendant had, in many instances, failed to report the presence of personal guests, such as friends and family members, on charter jet trips, failed to accurately report the destinations of the flights, incorrectly represented that a business purpose existed for certain charter jet trips, and incorrectly represented that a business purpose existed for certain credit card charges he submitted to Red Robin for payment as business expenses. Specifically, the investigation revealed that Defendant had knowingly or recklessly improperly claimed as business expenses the following amounts of personal expenses:

| Year | Charter Jet Expenses | Credit Card Charges | Total Personal Expenses |
|---|---|---|---|
| 2002 | $317,207 | $91,070 | $408,277 |
| 2003 | 275,972 | 68,712 | 344,684 |
| 2004 | 403,394 | 33,252 | 436,646 |
| Total unreported compensation: | | | $1,189,607 |

25. As a result, Defendant's compensation was materially understated in Red Robin's proxy statements, Forms 10-K and registration statements in the following amounts:

Total Compensation

|      | Undisclosed Compensation | Total Reported Compensation | That Should Have Been Reported | Percentage Misstatement |
|------|--------------------------|-----------------------------|--------------------------------|-------------------------|
| 2002 | $408,277                 | $ 707,870                   | $1,116,147                     | 37%                     |
| 2003 | $344,684                 | $1,019,752                  | $1,364,436                     | 25%                     |
| 2004 | $436,646                 | $1,144,468                  | $1,581,114                     | 28%                     |

26. The misstatements appeared in Red Robin's Forms 10-K filed March 28, 2003, March 12, 2004 and April 6, 2005, in proxy statements filed April 18, 2003, April 16, 2004 and April 22, 2005, in a Form S-3 registration statement filed November 3, 2003, and in a Form S-8 registration statement filed June 2, 2005.

27. Defendant signed and certified, pursuant 17 C.F.R. §240.13a-14, each of these Forms 10-K. The shareholder proxy statements were solicited on behalf of the board of directors, seeking proxy appointments for Defendant and Red Robin's former Chief Financial Officer.

28. In August 2005, at the request of Red Robin's board of directors, Defendant retired and resigned his positions at Red Robin. Red Robin issued a press release on August 11, 2005 announcing the results of the internal investigation and Defendant's departure. That same day Red Robin's stock price dropped by 24% to a closing price of $45.55, down from a closing price on August 10 of $59.79.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Fraud – Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)])

29. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

30. Defendant, directly and indirectly, with scienter, in the offer or sale of Red Robin securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, has employed a device, scheme, or artifice to defraud.

31. The violations occurred in Red Robin's Form S-3 registration statement filed November 3, 2003, and Form S-8 registration statement filed June 2, 2005.

32. These filings were materially false because, among other things, they materially understated Defendant's compensation as set forth in paragraph 25 above.

33. Defendant violated Section 17(a)(1) of the Securities Act because he, among other things, knowingly or recklessly failed to report and knowingly or recklessly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above.  Defendant also knowingly or recklessly reaffirmed his prior incorrect representations in each relevant year as set forth in paragraphs 18, 22, and 23 above.

34. By reason of the foregoing, Defendant violated, and unless restrained and enjoined, will violate Section 17(a)(1) of the Securities Act.

## SECOND CLAIM FOR RELIEF

### (Fraud – Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)])

35. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

36. Defendant, directly and indirectly, with scienter, in the offer or sale of Red Robin securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, has obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and has engaged in transactions, practices, or courses of business operated as a fraud or deceit upon the purchasers of Red Robin securities.

37. The violations occurred in Red Robin's Form S-3 registration statement filed November 3, 2003, and Form S-8 registration statement filed June 2, 2005.

38. These filings were materially false because they materially understated Defendant's compensation as set forth in paragraph 25 above.

39. Defendant violated Sections 17(a)(2) and (3) of the Securities Act because he, among other things, knowingly, recklessly or negligently failed to report and knowingly, recklessly or negligently reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above. Defendant also knowingly, recklessly or negligently reaffirmed his prior incorrect representations in each relevant year as set forth in paragraphs 18, 22, and 23 above.

40. By reason of the foregoing, Defendant violated, and unless restrained and enjoined, will violate Sections 17(a)(2) and (3) of the Securities Act.

## THIRD CLAIM FOR RELIEF
## (Fraud – Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §240.10b-5])

41. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

42. Defendant directly and indirectly, with scienter, in connection with the purchase or sale of Red Robin securities, by use of the means or instrumentalities of interstate commerce or by use of the mails, employed devices, schemes, or artifices to defraud, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or has engaged in acts, practices, or courses of business which operated as a fraud or deceit upon the purchasers or sellers of Red Robin securities.

43. The violations occurred in connection with Red Robin's Forms 10-K filed March 28, 2003, March 12, 2004 and April 6, 2005, and in Red Robin's proxy statements filed April 18, 2003, April 16, 2004 and April 22, 2005.

44. These filings were materially false because they materially understated Defendant's compensation as set forth in paragraph 25 above.

45. Defendant violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder because he, among other things, knowingly or recklessly failed to report and knowingly or recklessly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above. Defendant also knowingly or recklessly reaffirmed his prior incorrect representations in each relevant year as set forth in paragraphs 18, 22 and 23 above.

46. By reason of the foregoing, Defendant violated, and unless restrained and

enjoined, will violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## FOURTH CLAIM FOR RELIEF
### (Proxy Misstatements – Violation of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder [15 U.S.C. § 78n(a) and 17 C.F.R. § 240.14a-9])

47. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

48. Defendant, by the use of the mails or by means or instrumentality of interstate commerce or of a facility of a national securities exchange, solicited a proxy containing a statement which, at the time and in the light of the circumstances under which it was made, was false or misleading with respect to a material fact, or which omitted to state a material fact necessary in order to make the statements therein not false or misleading.

49. The violations occurred in connection with Red Robin's proxy statements filed April 18, 2003, April 16, 2004 and April 22, 2005.

50. These filings were materially false because they materially understated Defendant's compensation as set forth in paragraph 25 above.

51. Defendant violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder because he, among other things, knowingly failed to report and knowingly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above. Defendant also knowingly, reaffirmed his prior incorrect representations in each relevant year as set forth in paragraphs 18, 22, and 23 above.

52. By reason of the foregoing, Defendant violated, and unless restrained and

enjoined, will violate Section 14(a) of the Exchange Act and Rule 14a-9 thereunder.

### FIFTH CLAIM FOR RELIEF
### (Falsified Books and Records; Misrepresentations to Accountants – Violation of Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 [[15 U.S.C. § 78m(b)(5), and 17 C.F.R. §§ 240.13b2-1 and 240.13b2-2] thereunder)

53. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

54. Defendant knowingly circumvented a system of internal accounting controls, and knowingly falsified books, records, or accounts, and directly or indirectly falsified or caused to be falsified books, records or accounts described in Section 13(b)(2) of the Exchange Act, by, among other things, knowingly providing false information to Red Robin's accountants regarding his personal charter jet and other travel expenses.

55. Defendant knowingly circumvented a system of internal accounting controls, and knowingly falsified books, records, or accounts, and (i) made a materially false or misleading statement to Red Robin's accountants; and (ii) omitted to state a material fact necessary to make statements made, in light of the circumstances under which such statements were made, not misleading to a Red Robin accountant; in connection with the preparation or filing of documents and reports required to be filed with the Commission, by, among other things, knowingly providing false information to Red Robin's accountants regarding his personal charter jet and other travel expenses which information, as Defendant knew, was included in Red Robin's Forms 10-K filed March 28, 2003, March 12, 2004 and April 6, 2005, and Red Robin's proxy statements filed April 18, 2003, April 16, 2004 and April 22, 2005.

56. By reason of the foregoing, Defendant violated, and unless restrained and

enjoined, will violate Section 13(b)(5) of the Exchange Act, and Rules 13b2-1 and 13b2-2 thereunder [15 U.S.C. § 78m(b)(5), and 17 C.F.R. §§ 240.13b2-1 and 240.13b2-2.].

**SIXTH CLAIM FOR RELIEF**
**(False SEC Filings -- Aiding and Abetting Red Robin's Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, and 13a-1 [17 C.F.R. §§ 240.12b-20 and 240.13a-1] thereunder, and violation of Rule 13a-14 [17 C.F.R. § 13a-14] thereunder)**

57. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

58. Red Robin, an issuer of a security registered pursuant to Section 12(b) of the Exchange Act, filed materially misleading annual reports with the Commission.

59. By reason of the foregoing, Red Robin violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

60. The violations occurred in connection with Red Robin's Forms 10-K filed March 28, 2003, March 12, 2004 and April 6, 2005, which were materially misleading because, among other things, they contained material misstatements of Defendant's compensation.

61. Defendant knew of Red Robin's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and13a-1 thereunder, and substantially assisted Red Robin in committing these violations, because he, among other things, knowingly failed to report and knowingly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above.

62. By reason of the foregoing, Defendant aided and abetted Red Robin's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder,

and unless restrained and enjoined will continue to aid and abet violations of these provisions.

### SEVENTH CLAIM FOR RELIEF
### (False Books and Records -- Aiding and Abetting Red Robin's Violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)])

63. Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

64. Red Robin failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the company's transactions and dispositions of its assets. The records were inaccurate because, among other things, Red Robin improperly recorded the expenses set forth in paragraph 24 above as business expenses rather than as compensation expenses.

65. By reason of the foregoing, Red Robin violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

66. Defendant knew of Red Robin's violations of Section 13(b)(2)(A) of the Exchange Act and substantially assisted Red Robin in committing these violations because he, among other things, knowingly failed to report and knowingly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above.

67. By reason of the foregoing, Defendant aided and abetted Red Robin's violations of Section 13(b)(2)(A) of the Exchange Act, and unless restrained and enjoined will continue to aid and abet violations of these provisions.

### EIGHTH CLAIM FOR RELIEF
### (Internal Accounting Controls Violations -- Aiding and Abetting Red Robin's Violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)])

68.     Paragraphs 1 through 28 are hereby realleged and incorporated by reference.

69.     Red Robin failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were executed in accordance with management's general or specific authorization, and transactions were recorded as necessary to maintain accountability for assets, and that access to assets was permitted only in accordance with management's general or specific authorization. Internal controls were insufficient because, among other things, they failed to ensure the accurate recording of executive compensation expenses.

70.     By reason of the foregoing, Red Robin violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

71.     Defendant knew of Red Robin's violations of Section 13(b)(2)(B) of the Exchange Act and substantially assisted Red Robin in committing these violations because he, among other things, knowingly failed to report and knowingly reported incorrectly certain of his personal charter jet and other travel expenses as business-related as set forth in paragraphs 24 and 25 above.

72.     By reason of the foregoing, Defendant aided and abetted Red Robin's violations of Section 13(b)(2)(B) of the Exchange Act, and unless restrained and enjoined will continue to aid and abet violations of these provisions.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

**I.**

Find that the Defendant committed the violations alleged.

## II.

Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant from violating, directly or indirectly, the provisions of law and rules alleged in this Complaint.

## III.

Enter an order requiring Defendant to pay third tier civil penalties of $250,000.00, pursuant to Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 77t(d) and 78u(d)(3)].

## IV.

Order pursuant to Exchange Act Section 21(d)(2), as amended by Section 305 of the Sarbanes-Oxley Act. [15 U.S.C. 78u(d)(2)], or pursuant to the equitable authority of the court, that Defendant be permanently barred from serving as an officer or director of any public company.

**V.**

Grant such other relief as this Court may deem just or appropriate.

Dated: _____, 2007.

Respectfully submitted,

_____s/_____
ALLISON HERREN LEE
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO 80202
Phone: (303) 844-1055
Fax: (303) 844-1052